Jonathan David Leggo
6273 Aster Haven Circle
Haymarket, VA 20169
email: jonathanleggo@protonmail.com
phone: 703-986-7345



# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
## ALEXANDRIA DIVISION
401 Courthouse Square, Alexandria, VA 22314

JONATHAN DAVID LEGGO

PLAINTIFF

v.   CASE NO. 1:22-CV-374 LMB/IDD

M.C. DEAN, INC.

DEFENDANT

_____ /

# COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF UNDER THE AMERICANS WITH DISABILITIES ACT

## COUNT I

### Discrimination on the basis of disability

Plaintiff, Jonathan David Leggo, sues the defendant, M.C. DEAN, INC., for discrimination on the basis of disability, and for prohibited actions taken on the basis of this disability under the "regarded as" prong; and for declaratory and injunctive relief under Title I of the Americans with Disabilities Act as implemented under 29 CFR Part 1630, *et sequitur*, and alleges the following:

## JURISDICTION AND VENUE

1. This court has original and exclusive jurisdiction under Title I of the Americans with Disabilities Act of 1990 and the Americans with Disabilities Act Amendments Act of 2008; 42 U.S.C. §12101 and 42 U.S.C. §12112(a), (b) and (d)(4) as it pertains to "Discrimination"; as implemented by 29 CFR § 1630.2; §1630.4; §1630.5; §1630.13 and 1630.14(b)(3), (c) & (d) as it pertains to adverse employment actions, employers and medical examinations and interventions.

2. Venue is proper in the Eastern District of Virginia pursuant to 28 U.S.C. §1391(b)(2) because Plaintiff resides in this District and a substantial part of the events or omissions giving rise to the claims occurred in this District.

3. The incidents and facts giving rise to this complaint have occurred within the last one hundred eighty days. The plaintiff has commenced a complaint against the defendant with the Equal Opportunity Employment Commission (EEOC) on or about the date of September 23, 2021. The plaintiff has exhausted all administrative remedies and received a Right to Sue letter on January 10, 2022, a true and correct copy is attached in Exhibit A.

## PARTIES

4. Plaintiff, Jonathan David Leggo, resides in Prince William County, Virginia at the address of 6273 Aster Haven Circle; Haymarket, VA 20169 and is a qualified individual with a disability within the meaning of the ADA. The plaintiff is an employee of the defendant, which is a "covered entity" within the meaning of the Act.

5. The defendant's principal place of business is located at 1765 Greensboro Station Place; Tysons, VA 22102.

## PLAIN STATEMENT

6. Defendant discriminated against the plaintiff based upon perceived disability. When the plaintiff objected, the defendant sought to impose accommodations; including but not limited to: medical examinations, medical interventions including mask-wearing; without first conducting an individualized assessment to determine if he was a direct threat. Defendant has used policies and procedures that harass, isolate, segregate, limit, classify, deny equal

access and impose non-job-related medical exams and inquiries upon the plaintiff and this is prohibited under the ADA.

## STATEMENTS OF FACT

7.   The plaintiff is regarded as having a disability.

8.   The plaintiff is a qualified individual with a disability.

9.   The plaintiff is regarded as having a disability by the defendant and the defendant's policies are specifically implemented for the purpose of mitigating the disability which it regards the plaintiff as having.

10.   The plaintiff therefore has a disability under the protection of the ADA.

11.   The plaintiff is an employee of the defendant and has been continuously employed by the defendant since the date of June 2008.

12.   In August of 2021, the defendant began demonstrating by its policies and practices that it regards the plaintiff as having a disability of an impaired immune system and an impaired respiratory system; and began responding to the plaintiff as if he had a contagious disease.

13.   Defendant has never conducted the required individualized assessment to determine whether or not the plaintiff is a direct threat.

14.   The plaintiff duly noticed the defendant that he was claiming protection under the ADA because of being regarded as disabled.

15.   The plaintiff may proceed under the "regarded as" prong and this court has jurisdiction under the "regarded as" prong of the ADA.

16.   The complaint thereby satisfies the criteria for stating a *prima facie* cause of action for these reasons, along with the fact that the defendant has made a record of such disability as further alleged herein.

17.   The ADA also protects individuals such as the plaintiff for whom submitting to certain accommodations would create impairments.  The accommodations include, but are not limited to: submitting to repetitive, non-job-related medical examinations (nasal tissue

testing, antigen testing; daily health inquiries); collection of vital statistics (body temperature); being segregated and isolated (including quarantine without due process); using medical devices for mitigation measures (masks); disclosing plaintiff's medical records and history for non-job-related matters ("vaccine" status reports); taking multiple injections of experimental gene therapy solutions under "emergency use authorization" without informed consent; and participating in clinical trials and epidemiological experiments as a condition of employment.

18. Plaintiff re-alleges each statement from the Affidavit herein.

## COUNT I ALLEGATIONS OF DEFENDANT'S VIOLATIONS OF TITLE I OF THE ADA, 42 U.S.C. §12101 *et sequitur.*

19. Plaintiff incorporates each of the above statements of fact herein; the allegations contained in the following paragraphs and the plaintiff's supporting affidavit which is also re-alleged and incorporated herein.

20. Title I of the ADA prohibits employment discrimination on the basis of disability in all aspects of employment, in 29 CFR § 1630 *et sequitur;* and particularly §1630.4; § 1630.5.

21. In August of 2021, the defendant began regarding the plaintiff as having a disability of an impaired immune system and an impaired respiratory system; and began responding to the plaintiff as if he had a contagious disease. (See Affidavit (hereafter "AFF")

22. The defendant expresses the attitude toward the plaintiff as if the plaintiff is a direct threat to others, yet has never conducted an individualized assessment or complied with any of the statutory individual assessment criteria[1].(See AFF)

> 29 CFR § 1630.2(r):
>
> "Direct Threat means a significant risk of substantial harm to the health or safety of the individual or others that cannot be eliminated or reduced by reasonable accommodation. The determination that an individual poses a '<u>direct threat</u>' shall be

---

[1] EEOC Technical Manual 2.2 (c)  "...the Supreme Court has stated and the Congress has reiterated, "society's myths and fears about disability and disease are as handicapping as are the physical limitations that flow from actual impairments." The legislative history of the ADA indicates that Congress intended this part of the definition to protect people from a range of discriminatory actions based on "myths, fears and stereotypes" about disability, which occur even when a person does not have a substantially limiting impairment."

> based on an <u>individualized assessment</u> of the individual's present ability to safely perform the essential functions of the job. This assessment shall be <u>based on a reasonable medical judgment that relies on the most current medical knowledge and/or on the best available objective evidence</u>. In determining whether an individual would pose a direct threat, the factors to be considered include:
>
> (1) The duration of the risk;
>
> (2) The nature and severity of the potential harm;
>
> (3) The likelihood that the potential harm will occur; and
>
> (4) The imminence of the potential harm."

23. The defendant has made no meaningful efforts to remediate itself on the law, and has only referred to statements made on the CDC's website, but this clearly does not qualify as an individualized assessment.

24. Plaintiff has given defendant conspicuous notice that plaintiff objects to discrimination and declines any of the accommodations (mitigation measures) on the basis of rights protected by the ADA because defendant's policies and practices demonstrate that the defendant regards him as having a disability, and that the defendant has made a record of such disability by mis-classifying the plaintiff as having an impairment.

### Harassment, Isolation, Segregation and Denial of Equal Access

25. The defendant's responses to the requests made by the plaintiff to cease the discrimination and harassment were in fact non-responsive, dismissive or harassing; a true and correct copy of each is included with Exhibit A.

26. Despite plaintiff's written notices, the defendant continued without cessation to harass the plaintiff based upon disability by sending him numerous communications coercing him to accept various accommodations or suffer adverse employment actions. All written communications are attached as Exhibit A.

27. Defendant isolated, segregated and threatened to deny equal access to plaintiff by demanding plaintiff remain 6 feet away from co-workers; refusing him access to job sites based upon "vaccine status"; making him work remotely; ; segregating plaintiff on the basis

*ADA Complaint-- Jonathan David Leggo*

of "vaccine" status; implementing "first contact protocols" and "quarantine" without due process.

28. The defendant has failed to ensure the equal access or accessibility of the premises where the plaintiff is assigned to work. The plaintiff has thereby been prevented from enjoying equal access and the benefits of employment enjoyed by other employees.

### Limiting, Segregating and Classifying [2]

29. Defendant's so-called "COVID-19" policies impose a disability upon the plaintiff by limiting and impeding him from performing his employment duties to such a degree that this adversely affects his employment opportunities or status on the basis of disability because the defendant will not permit plaintiff to do his job without first submitting to the defendant's accommodations ("mitigation measures").

30. Defendant classified the plaintiff as "unvaccinated"[3]; is widely sharing this classification of the plaintiff with other employees without any regard to confidentiality[4]; and encourages employees to harass the plaintiff with repetitive emails, intimidating interactions; threats of limiting his access to job sites, and threats of termination.

31. Defendant's policy states that those employees classified as "unvaccinated", such as the plaintiff, are required to submit to weekly accommodations such as medical tests at their own expense, enhanced quarantine measures based upon "close contact" and continued masking.

32. Defendant repetitively asked the plaintiff to disclose his medical history on an online portal without any notice given regarding the data retention policy or who receives the data and for what purpose; however, defendant is clearly classifying employees by medical history; limiting or impeding the plaintiff's ability to perform his employment duties based upon his medical history; and threatening adverse employment actions against the plaintiff for refusing to disclose his medical history when the defendant has failed to give any conspicuous notice as to the manner in which such disclosures are necessary to the plaintiff's essential job function.

---

2 prohibited by 29 CFR § 1630.5

3 discrimination based upon physical condition

4 prohibited by 29 CFR § 1630.13.

*ADA Complaint-- Jonathan David Leggo*

33. Defendant also discussed in managerial meetings plans to raise the insurance premiums of "unvaccinated" workers; identify "unvaccinated" workers with stickers on their helmets; have managers tell "unvaccinated" workers that their tenure would be threatened; told managers to get lists of "unvaccinated" workers from HR; discussed ways to segregate "unvaccinated" workers from others; proposed "unvaccinated" workers be demoted and routed to the Ruther Glen site which is 80 miles from plaintiff's home.

### Non-job-related medical exams and inquiries

34. Title I prohibits the defendant from requiring medical examinations or making disability-related inquiries of employees unless such examination or inquiry is shown to be job-related and consistent with business necessity; at 42 U.S.C. §12112(d)(4); 29 CFR §1630.13 (b)(c).

35. An employer is entitled only to the information necessary to determine whether the employee can perform the essential functions of the job with or without reasonable accommodations and the defendant has failed to identify any set of facts that would qualify under this limitation.

> § 1630.13(b) Prohibited medical examinations and inquiries.
>
> (b) Examination or inquiry of employees. Except as permitted by § 1630.14, it is unlawful for a covered entity to require a medical examination of an employee or to make inquiries as to whether an employee is an individual with a disability or as to the nature or severity of such disability.
>
> (c) Examination of employees. A covered entity may require a medical examination (and/or inquiry) of an employee that is job-related and consistent with business necessity. A covered entity may make inquiries into the ability of an employee to perform job-related functions.

36. Certain examinations are allowed as part of an employee health program available to employees at the work site under CFR § 1630.14; however defendant is not running a voluntary health program as the policy is not presented as voluntary and defendant imposes adverse employment actions or retaliates against, interferes with, coerces, intimidates, and threatens employees within the meaning of Section 503 of the ADA, codified at 42 U.S.C. 12203 and 29 CFR Part 1630.14(c) for not complying with the policy.

37. Defendant has never conspicuously disclosed or gave legally adequate notice that complying with the COVID-19 mitigation measures ("accommodations") are an **essential function** of the job of Electrical Superintendent II; and the measures have never previously been an essential function of plaintiff's job. [5] (See Exhibit C "Job Description")

38. The plaintiff has already satisfied and met the criteria for his essential job function based upon the usual factors such as education, experience and work ethic. Defendant has failed to give conspicuous notice as to the manner in which these so-called "Covid-19" policies are related to the plaintiff's ability to perform his essential employment duties.[6]

39. Plaintiff claimed his right not to provide any medical information that is not related to the performance of his job duties.

**Plaintiff under no obligation to accept accommodations to perceived disability**

40. Defendant limited the accommodation measures[7], such as examinations; disclosures of medical records that were not job-related; experimental injections; medical interventions; equipment or products; to only those chosen by the defendant. Additionally, the employer failed to suggest other accommodations available which do not require injections, medical devices and medical examinations.

41. In fact, the defendant is not required to provide any accommodation under the "regarded as" prong.

> 29 CFR Part § 1630.9
>
> (e) A covered entity... is not required to provide a reasonable accommodation to an individual who meets the definition of disability solely under the "regarded as" prong (§ 1630.2(g)(1)(iii)).

42. The defendant has failed or refused to comply with this law, even making the outrageous claim that the plaintiff can either submit to complying with the accommodations or have his employment terminated, regardless of the defendant's legal duties or the law.

---

5  29 CFR 1630.2 definition "Essential Function": "(i) ....the reason the position exists is to perform that function."

6  https://www.eeoc.gov/publications/ada-your-responsibilities-employer

7  29 CFR Part 1630.2(j)(5)(i)

43. Defendant's policy of imposing accommodations also violates the plaintiff rights to medical privacy and informed consent.[8]

44. If the plaintiff had previously made at least one request for reasonable modifications or "religious exemption", plaintiff has since withdrawn such request.

45. Additionally, the so-called "vaccines" that are being promoted as vaccines do not actually prevent transmission or infection of any contagious disease, specifically regarding the so-called "COVID-19" or "SarsCOV2" purported "diseases".

46. Plaintiff requests that this court take judicial notice of Section 201(h) of the Food, Drug and Cosmetic Act and its Final Guidance titled, "Classification of Products as Drugs and Devices & Additional Product Classification Issues: Guidance for Industry and FDA Staff", published in September of 2017, in which the Food & Drug Administration **defines** wearing a mask for mitigation purposes as a medical device and the application of a medical device or contrivance. A true and correct copy of this is included as Exhibit B.

47. Plaintiff further requests judicial notice of the fact that the Food & Drug administration has never **approved** wearing such face masks, but only "authorized" them without any supporting medical or clinical data establishing any medical necessity or efficacy for wearing such contrivances.

48. The plaintiff requests that the court take judicial notice of the official mortality rates of the State of Texas and the United States for the years from 2017, 2018, 2019 and 2020 in which the standard deviation is zero, the very definition of no verifiable "pandemic".

49. No laws have changed that would create either a new duty of care or a new insurable risk for the defendant; and no new laws have created any new legal duty or obligation for the defendant to violate the medical privacy rights of anyone.

50. Plaintiff demands a jury trial.

51. **WHEREFORE**, Plaintiff demands judgment against the defendant for compensatory damages and that the court declare that Defendant's discriminatory actions and/or violations

---

[8] Defendant and its policies failed to advise the plaintiff of the absolute risks and absolute benefits for accepting accommodations of taking experimental injections, masking and tissue- testing under "emergency use authorization" guidelines, for a "contagious disease" that the defendant regards the plaintiff as having as set forth in 21 USC §360bbb-3 *et seq*.

- 9 -

*ADA Complaint-- Jonathan David Leggo*

as set forth in this Complaint violate Title I of the Americans with Disabilities Act under 42 U.S.C. §12101 and implemented under 29 CFR Part 1630 *et sequitur*;

52. And an order enjoining the defendant, along with its officers, agents, and employees, and all others in active concert or participation with them, from:

53. Engaging in discriminatory acts and/or omissions against the plaintiff because of (perceived) disability; and an order enjoining the defendant from implementing practices and policies in a manner that is inaccessible to individuals with disabilities, specifically the plaintiff, within the meaning of Title I of the ADA;

54. And ordering defendant to comply with the requirements of Title I of the Americans with Disabilities Act, 42 U.S.C. §12101; and,

55. Take such affirmative steps as may be necessary to restore, as nearly as practicable, each identifiable victim of the defendant's discriminatory conduct to the position that plaintiff would have been in, but for the Defendant's conduct, beginning with the plaintiff; and,

56. Take such affirmative steps as may be necessary to prevent the recurrence of any discriminatory conduct and to eliminate, to the extent practicable, the effects of such conduct.

57. Award monetary damages to the plaintiff, in an appropriate amount for injuries suffered as the result of Defendant's failure to comply with the requirements of Title I of the ADA, 42 U.S.C. §12101; and,

58. Assess a civil penalty against the Defendant in an amount authorized by 42 U.S.C. §12101 to vindicate the public interest and make the plaintiff whole; and,

59. Order such other relief as the interests of justice may require.

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF UNDER THE AMERICANS WITH DISABILITIES ACT**
**COUNT II**
**Retaliation, Coercion, Interference and Intimidation**

Plaintiff, Jonathan David Leggo, sues the defendant, M.C. DEAN, INC., for Retaliation, Coercion, Interference and Intimidation and for declaratory and injunctive relief

under Title I of the Americans with Disabilities Act as implemented under 29 CFR Part 1630, *et sequitur*, and alleges the following:

## JURISDICTION AND VENUE

1. This court has original and exclusive jurisdiction under Title I of the Americans with Disabilities Act of 1990 and the Americans with Disabilities Act Amendments Act of 2008; 42 U.S.C. §12101 and 42 U.S.C. §12112(a), (b) and (d)(4) as it pertains to "Retaliation, Coercion, Threats and Interference"; as implemented by 29 CFR Part 1630.12, 14(b)(3), (c) & (d) as it pertains to adverse employment actions.

2. Venue is proper in the Eastern District of Virginia pursuant to 28 U.S.C. §1391(b)(2) because Plaintiff resides in this District and a substantial part of the events or omissions giving rise to the claims occurred in this District.

3. The incidents and facts giving rise to this complaint have occurred within the last one hundred eighty days. The plaintiff commenced a complaint against the defendant with the Equal Opportunity Employment Commission (EEOC) on or about the date of September 23, 2021. The plaintiff has exhausted all administrative relief and received a Right to Sue letter on January 10, 2022, a true and correct copy is attached in Exhibit A.

## PARTIES

4. Plaintiff, Jonathan David Leggo, resides in Prince William County, Virginia at the address of 6273 Aster Haven Circle; Haymarket, VA 20169 and is a qualified individual with a disability within the meaning of the ADA. The plaintiff is an employee of the defendant, which is a "covered entity" within the meaning of the Act.

5. The defendant's principal place of business is located at 1765 Greensboro Station Place; Tysons, VA 22102.

## PLAIN STATEMENT

6. Defendant discriminated against the plaintiff based upon perceived disability under the "regarded as" prong and the "record of" prong of the ADA. When the plaintiff objected and conspicuously requested the discrimination to end, the defendant unceasingly retaliated against the plaintiff by intimidating and coercing the plaintiff to accept accommodations and

discrimination; interfering with his rights; and threatening adverse employment actions. Defendant created a "severe and pervasive" hostile work environment and repetitively threatened termination of plaintiff's employment.

## STATEMENTS OF FACT

7. The plaintiff conspicuously gave notice to the defendant of the reasonable, good faith belief that he was being discriminated against and was claiming protection under the ADA because of being regarded as disabled.

8. In August of, 2021, the defendant began unceasingly retaliating against the plaintiff despite plaintiff's reasonable good faith belief that he was exercising protected opposition to discrimination and claiming rights protected under the ADA.

9. The plaintiff advised each of the managers and supervisors and personnel in the human resources office that the plaintiff was a qualified individual with a disability and was regarded as having a disability. The plaintiff also advised each of these employees on numerous occasions that the defendant's policies pertaining to the mask-wearing and vaccines and disclosing medical history and submitting to medical examinations and the collection of vital statistics demonstrated very abundantly that the defendant also regarded the plaintiff as having a disability.

10. The plaintiff demanded that the defendant provide a copy of the individualized assessment that it conducted in order to determine that he was a direct threat however, defendant ignored these requests and continued to demand that the plaintiff participate in its "health control measures" or accommodations such as mask-wearing and medical examinations.

11. Every time plaintiff objected to discriminatory communications, actions and imposed accommodations from the defendant; defendant ignored the plaintiff and continued the same conduct by retaliating against the plaintiff.

12. Defendant took materially adverse actions[9] to deter plaintiff from engaging in protected opposition whenever plaintiff claimed the protection of the ADA for being regarded as disabled. Plaintiff exercised his right to refuse the defendant's offered accommodations and again asked to review the individualized assessment determining plaintiff was a "direct threat". The defendant ignored the plaintiff and refused to communicate or answer any questions.

13. The defendant also failed or refused to cite any legal authority for imposing these accommodations or health control measures, including but not limited to, identifying or describing any new legal duty of care as a result of these policies or any law, and refused or failed to describe or identify any insurable risk the defendant may have had to protect employees from any contagious disease that the plaintiff was regarded as having.

14. Defendant's adverse actions were causally connected to plaintiff's good faith opposition to the discriminatory policy; and to the defendant regarding the plaintiff as disabled with having a contagious disease that impaired his ability to engage in one or more major life activities.

15. Defendant's adverse actions were causally connected to plaintiff's good faith opposition to the discriminatory policy; to the plaintiff claiming the protection of the ADA without any need to request a medical or religious exemption; and to plaintiff's demand to review the individualized assessment upon which classifying plaintiff as a "direct threat" was based.

16. The plaintiff may proceed under the "regarded as" prong and this court has jurisdiction under the "regarded as" prong of the ADA.

17. The complaint thereby satisfies the criteria for stating a *prima facie* cause of action for these reasons, along with the fact that the defendant has made a record of such disability as further alleged herein and the plaintiff's supporting affidavit is also re-alleged and incorporated herein by reference and by paragraph number.

---

9   OLC Control Number: EEOC-CVG-2016-1 "EEOC Enforcement Guidance on Retaliation" p. 27. Materially Adverse Action: "any action that might well deter a reasonable person from engaging in protected activity."

18. The list of adverse employment actions taken by the defendant in retaliation against the plaintiff for not accepting its accommodations is extensive: defendant's HR encouraged plaintiff to submit a "religious" exemption and then in a managerial meeting plaintiff learned from the Vice-President that no such exemptions would ever be accepted; defendant threatened "unvaccinated" employees with higher insurance premiums, loss of tenure, and being re-assigned to remote work sites 80 miles away from plaintiff's home; plaintiff was at internal policy planning meetings where "no vaccine = no paycheck" was discussed; plaintiff also was in meetings where coercion tactics to increase "vaccination" like offering cash and car incentives were discussed and then implemented; plaintiff was threatened with termination on several occasions and given deadlines for termination such as November 15, 2021; plaintiff was refused access to certain job sites; plaintiff was repeatedly coerced by management to undertake accommodations for a perceived, yet undiagnosed disability; defendant continued to coerce and intimidate plaintiff despite plaintiff claiming protected opposition status by filing an EEOC Charge; defendant threatened plaintiff with incurring extra costs for weekly "nasal tissue testing" at his own expense that other employees did not incur; and defendant's ADA compliance officer refused to mitigate the retaliation or aid and encourage the plaintiff in enjoying rights protected under the ADA.

19. Defendant took adverse employment actions against the plaintiff based upon perceiving the plaintiff as a direct threat and as having an impaired immune system, impaired respiratory system; which corroborates that defendant, in fact, regards the plaintiff as disabled.

20. Plaintiff re-alleges each statement from the Affidavit herein.

## COUNT II ALLEGATIONS OF DEFENDANT'S VIOLATIONS
## OF TITLE I OF THE ADA, 42 U.S.C. §12101 *et sequitur.*

21. Plaintiff incorporates each of the above statements of fact herein; the allegations contained in the following paragraphs and the plaintiff's supporting affidavit which is also re-alleged and incorporated herein.

22. The ADA also prohibits employers from retaliating against individuals who oppose discriminatory activities or who make charges, testify, assist, or participate in any manner in

*ADA Complaint-- Jonathan David Leggo*

an investigation, proceeding or hearing under the ADA, Title 42 U.S.C. § 12203 and 29 CFR Parts 1630.12(a) and (b) and Parts 1630.13(b), (c), (d) and Part 1630.14(c), to wit:

### Retaliation

29 CFR § 1630.12 Retaliation and coercion.

(a) Retaliation. It is unlawful to discriminate against any individual because that individual has opposed any act or practice made unlawful by this part or because that individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing to enforce any provision contained in this part.

23. The plaintiff was threatened to be terminated because of his unmasked and unvaccinated condition and has successfully stated a violation of the act simply because he has been subjected to an action prohibited under the law because of perceived physical impairment.

24. The impairment **experienced** by the plaintiff in connection with his respiratory and immune systems is neither transitory nor minor from the defendant's point of view because the defendant has no end date when it will not regard this status as warranting termination.

25. On September 16, 2021, plaintiff learned that certain job sites would not be available to him as he would be considered in violation of OSHA safety guidelines without any evidence of individualized assessment because defendant was creating false employment records against the plaintiff and other "unvaccinated" employees; and also on September 16, 2021, plaintiff was threatened with being fired on November 15, 2021 if he did not get "vaccinated".

26. Defendant continued to threaten the plaintiff with retaliation by termination; even after it was aware of a pending EEOC investigation and plaintiff's protected opposition.

27. Nor can the defendant claim it was unaware that its own perception was the very basis for threatening termination; which was the unvaccinated condition of the plaintiff and the attendant deficiencies associated with the plaintiff's respiratory and immune systems.

28. Defendant adopted a new discriminatory policy and discriminated against the plaintiff based on perceived disability. Plaintiff opposed the unlawful policy, and defendant retaliated against the plaintiff by threatening to terminate his employment through the ruse of

classifying plaintiff as a "safety violation" under OSHA regs by necessarily making false employment records; and also by falsely classifying plaintiff based on non-job-related medical inquiries and exams; however, the evidence shows that plaintiff was threatened with termination because plaintiff was deemed a "direct threat" without an individualized assessment and because plaintiff was classified as "unvaccinated" and declined accommodations.

### Coercion, Interference or Intimidation

29 CFR § 1630.12

> (b) Coercion, interference or intimidation. It is unlawful to coerce, intimidate, threaten, harass or interfere with any individual in the exercise or enjoyment of, or because that individual aided or encouraged any other individual in the exercise of, any right granted or protected by this part.

29. Defendant effectively coerced the plaintiff by refusing to provide requested proof of an individualized assessment; refusing to provide a risk/benefit analysis as required for true informed consent; and refused to recognize the plaintiff's right to refuse medical treatment or participate in a clinical study; and refusing to provide requested proof of liability insurance, thus interfering with plaintiff's enjoyment of protected rights.

30. Defendant coerced the plaintiff to submit to the accommodation measures, medical interventions and examinations and other health control measures, even though the defendant was duly advised by the plaintiff that the plaintiff was not subject to any health control measures by any court orders, and that the defendant was not empowered by any court order or other legal duty to impose such interventions, examinations or control measures upon the plaintiff[10] and one such coercion program was the "Get Vaxxed | Earn Cash | Win a Car" program discussed in a managerial meeting plaintiff was present at.

31. Defendant allowed other employees to coerce, intimidate or verbally ridicule and abuse the plaintiff in violation of the defendant's duty of care.

32. Defendant threatened the plaintiff with the termination of employment because of a perceived disability and as a result of classifying plaintiff as "unvaccinated".

---

10  See Texas Health and Safety Code 81.083 and Texas Public Health Emergencies Bench Book.

33. Defendant threatened the plaintiff with exclusion and even demotion because of disability.

34. Defendant's designated compliance agents interfered with plaintiff's rights under the ADA by refusing to aid and encourage plaintiff in the enjoyment of his rights under the ADA which is a duty of the defendant.

35. Defendant's policies interfered with plaintiff's rights by failing to advise the plaintiff that no "vaccine" accommodations, which have been approved by the Food & Drug Administration, are commercially available to the plaintiff, or are yet in production.[11]

36. Additionally, the so-called "vaccines" that are being promoted as vaccines do not actually prevent transmission or infection of any contagious disease, specifically regarding the so-called "COVID-19" or "SarsCOV2" purported "diseases".

37. Defendant is interfering with the plaintiff's rights by obfuscation and by refusing to acknowledge rights protected under the ADA.[12]

> The EEOC has offered guidance on interference and states:
>
> "Examples of interference include: issuing a policy or requirement that purports to limit an employee's rights to invoke ADA protections (e.g., a fixed leave policy that states 'no exceptions will be made for any reason');"[13]

38. Defendant's notices to the plaintiff failed to include conspicuous notice as to the manner in which its accommodations ("Covid policies") are related to his essential job function, and do not mention plaintiff's right of refusal under EUA guidelines[14].

39. Defendant also failed to give notice of plaintiff's right to refuse the defendant's accommodations under the ADA[15], and failed to advise the plaintiff of his right to informed consent.

---

[11] Comirnaty is not available in the US.

[12] 42 USC 12203(b) and 29 CFR 1630.12(b).

[13] https://www.eeoc.gov/laws/guidance/questions-and-answers-enforcement-guidance-retaliation-and-related-issues

[14] Title 21, Chapter 9 V, Part E §360bbb–3a. Emergency use of medical products.

[15] 29 CFR Part 1630.9 (d) & (e)

- 17 -

*ADA Complaint-- Jonathan David Leggo*

40. Defendant's policy and written notices interfered with plaintiff's ADA rights because they limited plaintiff's right to invoke ADA protections under the 'regarded as" prong, including without limitation, the right to be free of discrimination and retaliation based upon disability, such as being terminated or segregated because of one's physical condition.

41. Defendant engaged in materially adverse employment actions when plaintiff notified the defendant that the plaintiff was not waiving the right of refusal, the right of informed consent, and the right to an individualized assessment before being labeled a direct threat based upon his rights under the ADA.

42. Defendant deceptively tried to persuade plaintiff that his only remedy to the illegal policy demands would be to ask for an accommodation based on "religious exemption" yet defendant refused to recognize disability based upon the other two prongs of the ADA; thereby creating a false record that is without legal merit and creates a substantial prejudice against the plaintiff to seek a remedy in court.

### Harm and Injury

43. The injury suffered by the plaintiff is thereby concrete and particularized and it is actual and imminent. The injury alleged in the complaint, including the pleading and exhibits, clearly sets forth a set of facts that actually occurred and are not conjectural or hypothetical. The injury described therein is at least fairly traceable to the challenged action, conduct and policies of the defendant.

44. The harm (injury) already suffered by the plaintiff includes, but is not limited to, having to choose between waving personal property rights, medical privacy rights, and submitting to medical interventions and examinations without the benefits of informed consent; or being discriminated and retaliated against due to being regarded as if he has a contagious disease without any individualized assessment according to any medical or scientific standards and having his employment threatened with termination.

45. Once violated, these rights cannot be recovered. The medical privacy rights are the plaintiff's intangible property rights which are not required to be waived as a condition of employment and include the right to refuse to participate in any epidemiological experiments or clinical trials.

46. Defendant's policies demonstrate soundly and convincingly, that its policies inflict future harm against the plaintiff who is regarded as having a disability or invisible disability and that the defendant fully intends to continue these policies and that the defendant fully intends to retaliate and continue retaliating against the plaintiff as alleged herein.

47. It is important to note that none of the personnel in human resources that were involved in this matter ever once cited any legal authority that countermands the ADA.

48. Furthermore, defendant never cited any legal authority or obligation that has created any new duty of care or insurable risk to impose the discriminatory policies.

49. Furthermore, the defendant failed to identify any insurable risk for engaging in the administration of medical examinations, interventions or protecting anyone from what is being claimed as a "pandemic" or "public health danger".

50. Additionally, defendant fails to cite any insurable risk for the same or for those suffering any adverse health consequences as a result of complying with the accommodations administered by unlicensed, untrained, uninsured and un-equipped employees of the defendant.

51. Even one's own licensed and insured physician requires informed consent as a condition of administering any medical examination or intervention upon the patient. No laws have changed and the defendant is without any legal authority or obligation to engage in these practices, and especially engage in harassment, discrimination and retaliation in violation of federal law.

52. As a result of Defendant's actions the plaintiff has experienced discrimination, segregation, isolation, retaliation, coercion, interference, threats of termination and disruption in his career.

53. Plaintiff demands a jury trial.

54. **WHEREFORE**, Plaintiff demands judgment against the defendant for compensatory damages and that the court declare that Defendant's retaliatory, coercive, interfering and intimidating actions and/or violations as set forth in this Complaint violate Title I of the Americans with Disabilities Act under 42 U.S.C. §12101 and implemented under 29 CFR Part 1630 *et sequitur*;

55. And an order enjoining the defendant, along with its officers, agents, and employees, and all others in active concert or participation with them, from:

56. Engaging in retaliation, coercion, interference and intimidation and/or omissions against the plaintiff because of his disability; and an order enjoining the defendant from implementing practices and policies in a manner that is inaccessible to individuals with disabilities, specifically the plaintiff, within the meaning of Title I of the Americans with Disabilities Act (ADA);

57. And ordering defendant to:

58. Comply with the requirements of Title I of the Americans with Disabilities Act, 42 U.S.C. §12101; and,

59. Take such affirmative steps as may be necessary to restore, as nearly as practicable, each identifiable victim of the defendant's discriminatory conduct to the position that he would have been in, but for the Defendant's conduct, beginning with the plaintiff; and,

60. Take such affirmative steps as may be necessary to prevent the recurrence of any retaliation, coercion, interference and intimidation and to eliminate, to the extent practicable, the effects of such conduct.

61. Award monetary damages to the plaintiff, in an appropriate amount for injuries suffered as the result of Defendant's failure to comply with the requirements of Title I of the ADA, 42 U.S.C. §12101; and,

62. Assess a civil penalty against the Defendant in an amount authorized by 42 U.S.C. §12101 to vindicate the public interest and make the plaintiff whole; and,

63. Order such other relief as the interests of justice may require.

DATED this 3 day of April 2022.

_Jonathan David Leggo, Plaintiff_