IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| JONATHAN DAVID LEGGO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 1:22-cv-374 (LMB/IDD) |
| | ) |
| M.C. DEAN, INC., | ) |
| | ) |
| Defendant. | ) |

MEMORANDUM OPINION

Pending before the Court is defendant M.C. Dean, Inc.'s ("M.C. Dean" or "defendant") Motion to Dismiss Amended Complaint [Dkt. No. 33], to which pro se plaintiff Jonathan David Leggo ("Leggo" or "plaintiff") has responded [Dkt. No. 36]. Finding that oral argument will not aid in the decisional process, the Court will resolve the motion on the papers. For the reasons that follow, defendant's Motion to Dismiss Amended Complaint will be granted, and this civil action will be dismissed with prejudice.

I. BACKGROUND

Proceeding pro se, plaintiff Jonathan David Leggo ("Leggo" or "plaintiff") filed a two-count Complaint alleging that his employer, M.C. Dean, violated the Americans with Disabilities Act ("ADA") by discriminating and retaliating against him on the basis of a perceived disability when he refused to comply with the M.C. Dean's COVID-19 policy. [Dkt. No. 1]. After defendant filed a motion to dismiss [Dkt. No. 17], plaintiff filed an Amended Complaint raising the same claims, which includes supplementary affidavits and numerous supporting documents. [Dkt. Nos. 26, 30].

Defendant has moved to dismiss the Amended Complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. Rule 12(b)(6) requires a court to dismiss a complaint if it does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Although allegations in a pro se complaint are construed liberally, a pro se complaint must still allege a plausible claim for relief. Thomas v. The Salvation Army S. Territory, 841 F.3d 632, 637 (4th Cir. 2016).

The Amended Complaint is replete with plaintiff's opinions and commentary on the COVID-19 virus and pandemic, the federal government and private sector's response to the pandemic, and the science surrounding COVID-19 vaccines, etc. To the extent plaintiff's characterizations are not supported by factual allegations or are irrelevant to his ADA claims, the Court disregards them as "unwarranted inferences, unreasonable conclusions, or arguments" that need not be accepted as true when evaluating a motion to dismiss. Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 253 (4th Cir. 2009). Nor is the Court required to "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002). Moreover, "in the event of conflict between the bare allegations of the complaint and any exhibit attached . . . , the exhibit prevails." Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 166 (4th Cir. 2016) (internal quotations omitted). Under these principles, the Amended Complaint's mischaracterization of communications and documents attached as exhibits will be disregarded.

Having reviewed the Amended Complaint and its attachments, the following factual allegations form the essence of plaintiff's discrimination and retaliation claims. For 13 years, Leggo has been and is currently employed by M.C. Dean as an electrical superintendent,

overseeing commercial electrical installations for universities, federal agencies, military bases, and data centers and supervising other employees. [Dkt. No. 30] at 3.

In August 2021, Leggo learned of M.C. Dean's "new policy" regarding COVID-19, when M.C. Dean informed its employees that based on the CDC's guidance, which recommended that masks should be worn indoors in communities classified as experiencing substantial or high transmission rates of COVID-19, as was the case in all of M.C. Dean's office locations in the United States, masks would be required in facilities that M.C. Dean owned and operated. Id. at 3-4; [Dkt. No. 26-3] at 22. M.C. Dean also requested that employees complete a "Vaccine Tracking" survey to report their COVID-19 vaccination status to help the company "assess who can and cannot access certain customer sites" based on the customer's vaccination requirements. [Dkt. No. 26-3] at 22. Employees who declined to report their vaccination status could select "I choose not to disclose," but they would be treated as unvaccinated, which could limit their project assignments depending on the customer's vaccination requirements. Id.; [Dkt. No. 30] at 3-4. M.C. Dean also informed employees that some of its customers were requiring weekly confirmation of vaccination status or negative COVID-19 tests and provided a link to upload weekly test results for "teams on these sites." [Dkt. No. 26-3] at 22. M.C. Dean clarified that this was a "customer-defined requirement and is unique to specific customer sites. This is not a requirement to access M.C. Dean facilities." Id.

On August 25, 2021, Leggo requested a religious exemption from "covid testing and vaccines." Id. at 4, 15-20. On September 7, 2021, Misty Miran ("Miran"), a human resources employee, responded to Leggo's request and expressed that "it is our understanding that the job site you are currently assigned to does not require you to be vaccinated, nor does it require a weekly COVID test," but indicated that his request would be kept on file so it could be

"revisit[ed] should the need for a religious exemption change." Id. at 28. Miran also asked Leggo to complete M.C. Dean's vaccination survey. Id.

Because Leggo was in a supervisory position, he continued to receive emails reminding him to follow up with his team members about completing the vaccination survey, as well as emails asking him to complete the survey. Id. at 4. These reminders advised that if an employee did not want to disclose their vaccination status, they could select "option 3" in the survey but would "be considered unvaccinated, which may limit [their] project assignment opportunities." Id. at 25. Leggo felt that these email reminders constituted "harassment" and caused him to worry about "losing [his] job and income," and because of the ensuing "stress," he experienced "itchy [and] painful rashes." Id. at 4-5.

On September 13, 2021, Leggo received an email from M.C. Dean vice president Ahmed Gokturk ("Gokturk") asking supervisors to encourage their team members to get vaccinated, because "[t]he landscape is changing; the government and the majority of our customers are mandating vaccination by 11/15 in order to access and work at job sites," meaning that "individuals not vaccinated will not be able to work." Id. at 31. Gokturk observed that "[w]e are currently at 50% vaccinated which means we won't be able to fulfill our contractual obligations and half of our workforce will not be able to work and earn a paycheck," and advised that "[a]s a leadership team we need to engage team members . . . to encourage them to get vaccinated prior to the deadline in order to keep everyone working." Id. Leggo felt that he was being "threatened with job loss by November 15th." Id. at 5.

On September 14, 2021, before a scheduled meeting with Miran, Leggo sent a confidential "Notice of Employment Discrimination and Harassment Based Upon Disability" to human resources, in which he claimed that he was "tricked and coerced . . . into assuming that a

4

[r]eligious [e]xemption or [m]edical [e]xemption was the only option" available, and he invoked his rights under the ADA. Id. at 5, 32-33. Specifically, Leggo wrote that he was "being regarded as having a contagious disease without any individualized assessment and continually being asked for [his] medical records and to submit medical examinations and interventions (accommodation or medical measures) without any informed consent," such as "mask-wearing, vaccines, social distancing, hand-washing and submitting to medical examinations such as the collection of vital statistics (body temperature) or tissue samples (diagnostic testing)." Id. at 32. Leggo also informed human resources that he was "documenting acts of retaliation and harassment" to which he had been subjected. Id. The next day, Leggo met with Miran and discussed his concerns and the harassment and intimidation he was experiencing, pointing to Gokturk's September 13, 2021 email. Id. at 5-6.

On September 16, 2021, Andrew Kleeman ("Kleeman"), a superintendent, forwarded Leggo an email sent by Boeing to its contractors about new COVID-19 requirements for accessing the "ADF-E Facility" at Fort Belvoir, which had been implemented by the Department of Defense. Id. at 6, 43-47. Boeing's email indicated that contractors would be required to carry a completed "DD Form 3150"—the Department of Defense's Certification of Vaccination form—when accessing the facility, and that at a later time, a COVID-19 test requirement would be implemented for workers who did not attest to being fully vaccinated. Id. at 44-46.

Over the next few days, Leggo attended meetings among superintendents and supervisors in which Gokturk and Kleeman discussed the consequences of workers remaining unvaccinated, including that they might be terminated, and the ways in which managers could encourage employees to get vaccinated, such as through personal outreach, offering material incentives, or discussing the potential impact on health insurance or future employment prospects. Id. at 6-7.

Kleeman suggested reaching out to human resources for a list of unvaccinated individuals. Id. at 7. These conversations made Leggo feel that he was being singled out and that his job was "no longer based upon [his] merits, skills or strong work ethic" and caused him to suffer from insomnia, "mental fatigue," "brain fog," and "stress-induced body rashes." Id.

On September 17, 2021, human resources confirmed that Leggo had withdrawn his religious accommodation request and declined to act on his claims of disability discrimination and harassment, finding them unsubstantiated. Id. at 51. Human resources also indicated that the projects Leggo was staffed on did not require him to be vaccinated. Id. Leggo subsequently filed a charge of discrimination and request for mediation with the Equal Employment Opportunity Commission. Id. at 8. On September 29, 2021, Leggo filed a notice invoking his rights under the ADA due to M.C. Dean's "vaccine mandate." Id. at 8, 70.

Two days later, on October 1, 2021, Leggo received an announcement from M.C. Dean about federal vaccination requirements, which informed employees about a recent executive order "mandating [f]ederal employees and contractors to be vaccinated, [and] removing the alternative for testing," and advised that contractors might need to be vaccinated as early as December 8, 2021. Id. at 9, 75. The announcement expressed concern that vaccination requirements from both M.C. Dean's commercial and federal customers "could jeopardize the livelihood of employees who are not currently vaccinated." Id. at 75. On October 24, 2021, Leggo received another request to provide his vaccination status, and Leggo declined to respond. Id. at 9. On October 28, 2021, Kleeman sent an email to undisclosed recipients describing upcoming vaccination deadlines for employees working on government contracts, and Kleeman indicated that opportunities were available at the "ModularMEP site" in Ruther Glen, Virginia,

for employees who did not wish to be vaccinated. Id. at 10, 93. Kleeman asked recipients to share the email with their team members. Id. at 93.

On April 4, 2022, Leggo attended an orientation for a project at the United States Army base in Fort Belvoir. [Dkt. No. 30] at 6. He was given a DD Form 3150 to certify his vaccination status. Id. On April 6, 2022, he received an email from the safety manager at Grunley Construction Company, Inc. ("Grunley") requesting that contract personnel complete DD Form 3150 and requiring that unvaccinated personnel send proof of a negative COVID-19 test within 72 hours of accessing the job site, pursuant to the Department of Defense's COVID-19 policy for contractor access to its facilities. Id. at 7; [Dkt. No. 26-2] at 3-5.

The next day, Leggo's "certified ADA Advocate" Moco Coeland sent Grunley, M.C. Dean, and the Department of Defense a letter alleging that Grunley and the Department of Defense were unlawfully treating Leggo as disabled in violation of the ADA. Id. at 7-8; [Dkt. No. 26-2] at 7-10. On April 15, 2022, Miran responded to the letter, clarified that the vaccination and testing requirement at Fort Belvoir was imposed by the Department of Defense, and expressed that M.C. Dean was willing to work with Leggo, including to reassign him to a work location that does not require vaccination or testing "without any change to salary, title, or other aspects of [his] employment with M.C. Dean." [Dkt. No. 26-2] at 11; [Dkt. No. 30] at 8-9.

Leggo maintains that he "mostly" worked on non-government projects in the past but that since giving notice of his perceived disability, M.C. Dean has included his name on federal projects with COVID-requirements to "segregate, isolate and penalize [him], resulting in his loss of job opportunities" which would ultimately lead to his termination. [Dkt. No. 30] at 8, 11. Although Leggo is still employed by M.C. Dean, he claims that his "duties and opportunities

7

have dropped by two-thirds"; however, he "has a salaried position which remains constant" and in fact received a raise in September 2021. Id. at 10-11; [Dkt. No. 26-3] at 119-20.

II. DISCUSSION

A. **Discrimination (Count I)**

Count I of the Amended Complaint alleges a claim of disability discrimination under the ADA, which prohibits an employer from "discriminat[ing] against a qualified individual on the basis of disability . . . ." 42 U.S.C. § 12112(a). To state a claim for disability discrimination, a complaint must allege that (1) the plaintiff was disabled, (2) he was a qualified individual, and (3) "he suffered an adverse employment action based on his disability." Hice v. Mazzella Lifting Techs., 589 F. Supp. 3d 539, 547 (E.D. Va. 2022). The Amended Complaint asserts both "regarded as" and "record of" disability claims under the ADA. An ADA claim based on being "regarded as" having a disability requires that the plaintiff "has been subjected to an action prohibited under [the ADA] because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A). To plead a claim for disability discrimination based on having a "record of" a disability, a complaint must allege that the plaintiff has "a history of, or has been misclassified as having, a . . . physical impairment that substantially limits one or more major life activities." Reynolds v. Am. Nat'l Red Cross, 701 F.3d 143, 153 (4th Cir. 2012) (quoting Rhoads v. FDIC, 257 F.3d 373, 391 (4th Cir. 2001)). For the reasons explained below, Count I fails to state a claim for disability discrimination because the Amended Complaint does not allege facts showing that M.C. Dean regarded Leggo as disabled or that he had a record of a disability, and it does not allege that he suffered any adverse action because of that perceived disability.

The Amended Complaint alleges that M.C. Dean regarded Leggo as having a disability because he was considered unvaccinated under its COVID-19 policy and consequently treated as

8

"being perpetually infectious with COVID 19" or being susceptible to "a deadly, contagious disease" in the future. [Dkt. No. 30] at 7, 11. The Fourth Circuit has explained that a "regarded as" claim for disability discrimination requires that an employer "entertain a misperception" and "'focuses on the reactions and perceptions of the [employer's] decisionmakers' who worked with the employee." Wilson v. Phoenix Specialty Mfg. Co., Inc., 513 F.3d 378, 385 (4th Cir. 2008) (quoting Runnebaum v. NationsBank of Md., N.A., 123 F.3d 156, 172-73 (4th Cir. 1997)). Here, the allegation that M.C. Dean regarded Leggo as having a disability of being perpetually infected with or susceptible to COVID-19 is implausible. M.C. Dean's COVID-19 policy was generally applicable to all employees, and the company's decision to require all employees to attest to their vaccination status "does not plausibly reflect a determination or belief that any of its employees are disabled or impaired." Jorgenson v. Conduent Transp. Sols., Inc., Civil No. SAG-22-01648, 2023 WL 1472022, at *4 (D. Md. Feb. 2, 2023); see Shklyar v. Carboline Co., No. 4:22 CV 391 RWS, 2022 WL 2867073 (E.D. Mo. July 21, 2022), aff'd, No. 22-2618, 2023 WL 1487782 (8th Cir. Feb. 3, 2023) (reasoning that "to infer that [an employer] regarded [an employee] as having a disability" based on a "generally applicable" COVID-19 mitigation policy "would require inferring that [the employer] regarded all of its . . . employees as having a disability"). Plaintiff refused to disclose his vaccination status, and M.C. Dean's resulting treatment of him as unvaccinated does not create a plausible inference that M.C. Dean perceived him as having an "impairment" or disability of any kind.

  As the documents attached to the Amended Complaint make clear, M.C. Dean did not have a policy that required employees to be vaccinated or to submit to weekly testing. Rather, its vaccination attestation requirement was implemented to ensure that the staffing of its employees complied with the vaccination or testing requirements of its commercial and federal government

9

customers. Plaintiff's inability to work at certain customer facilities, such as the Department of Defense, was the result of vaccination requirements implemented by the federal government or its customers, and not by M.C. Dean. The Amended Complaint does not allege any facts supporting a plausible inference that M.C. Dean perceived plaintiff as having a disability. Moreover, the documents attached to the Amended Complaint indicate that M.C. Dean was willing to find alternative customer sites that did not have vaccination requirements for unvaccinated employees like Leggo, undermining any purported inference that his employer perceived him as having a disability.[1] For the same reasons, plaintiff's claim that M.C. Dean had a "record of" plaintiff having a disability also fails, because the factual allegations do not support any inference that M.C. Dean ever classified Leggo as disabled.

Moreover, Count I fails to state a claim for disability discrimination because the Amended Complaint lacks sufficient allegations that Leggo suffered an adverse action. To state a claim for unlawful discrimination, "the plaintiff must show that her employer took an action that adversely 'affect[ed] employment or alter[ed] the conditions of the workplace.'" Laird v. Fairfax Cnty., 978 F.3d 887, 893 (4th Cir. 2020) (emphasis omitted) (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 62 (2006)). To be actionable under the ADA, an adverse action "must result in 'some significant detrimental effect,' requiring more than a position that is 'less appealing' to the plaintiff." Id. (emphasis omitted) (quoting Holland v. Wash. Homes, Inc., 487 F.3d 208, 219 (4th Cir. 2007)). As relevant here, the Fourth Circuit has explained that "absent any decrease in compensation, job title, level of responsibility, or

---

[1] The Court does not and need not decide the circumstances under which susceptibility to COVID-19 or a "deadly, contagious disease" may be considered a "physical impairment" within the meaning of the ADA. In this case, there is no plausible inference that plaintiff, who refused to attest to his vaccination status as part of his employer's efforts to ensure compliance with its customers' requirements, was regarded as having a disability.

opportunity for promotion, reassignment to a new position commensurate with one's salary level does not constitute an adverse employment action even if the new job does cause some modest stress not present in the old position." Holland, 487 F.3d at 219 (quoting Boone v. Goldin, 178 F.3d 253, 256-57 (4th Cir. 1999)).

In this case, Leggo continues to work for M.C. Dean, and the only adverse action pleaded in the Amended Complaint is a two-thirds reduction of his "duties and opportunities," as well as the decrease of the size of the team he supervises. [Dkt. No. 30] at 10-11. The Amended Complaint does not allege that the decline in his duties and opportunities has had any negative effect on his employment with M.C. Dean or that his inability to work on projects with a vaccination requirement caused a detrimental effect on his employment. To the contrary, the Amended Complaint admits that Leggo's salary has "remain[ed] constant" and the exhibits attached to the Amended Complaint indicate that he even received a pay raise after M.C. Dean implemented its COVID policy. [Dkt. No. 30] at 11-12; [Dkt. No. 26-3] at 119-20. Although Leggo maintains that one of the alternative projects for unvaccinated employees, the Ruther Glen project, involves "indoor factory assembly work" and is "robotic," located far from his house, and he "consider[s] it a demotion," id. at 10, Leggo's mere dislike for the project and complaints about travel inconvenience are insufficient to support that he suffered adverse action.

Finally, Leggo speculates that he is being placed on federal projects that he cannot work on to penalize him, id. at 8, that his loss of duties and opportunities "could ultimately lead to loss of income and termination," id. at 11, and that he has not been fired only because he has filed a lawsuit against M.C. Dean, [Dkt. No. 36] at 6; however, this kind of speculation about hypothetical injury is insufficient to plead adverse action and does not state a plausible claim for discrimination. For these reasons, Count I will be dismissed.

11

### B. Retaliation (Count II)

Count II of the Amended Complaint alleges that M.C. Dean retaliated against plaintiff after he "exercised his right to refuse [M.C. Dean's] 'COVID policy' measures" based on his "good faith belief" that the policy violated the ADA. [Dkt. No. 30] at 18. To state a claim for retaliation under the ADA, a complaint must allege that (1) the employee "engaged in protected conduct, (2) he suffered an adverse action, and (3) a causal link exists between the protected conduct and the adverse action." Reynolds, 701 F.3d at 154.

Even if opposing M.C. Dean's COVID-19 policy under the ADA amounted to protected activity, defendant correctly argues that Leggo's retaliation claim fails because he has not alleged facts supporting a claim that he suffered an adverse action because of this protected activity. "An alleged retaliatory action must be 'materially adverse,' meaning that the plaintiff must show that the action 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" Laird, 978 F.3d at 893. The Amended Complaint alleges several purportedly retaliatory actions, none of which are actionable.

First, Leggo contends that because he opposed M.C. Dean's COVID-19 policy, he was prevented from working on certain job sites, isolated from other employees, and his employment duties and opportunities were limited; however, Leggo admits that he has suffered no impact to his salary and only speculates that these limitations "will lead to materially reducing his benefits." [Dkt. No. 30] at 19. Given the absence of any significant impact of his assignment limitations on his employment with M.C. Dean, it is implausible that these actions would have "dissuaded a reasonable worker from making . . . a charge of discrimination." Hoyle v. Freightliner, LLC, 650 F.3d 321, 337 (4th Cir. 2011) (quoting Burlington, 548 U.S. at 68). Even if the Amended Complaint did properly allege an adverse action, there is no plausible inference of a causal connection between Leggo's opposition to the COVID-19 policy and the limitations

12

on his work assignments, because as previously discussed, M.C. Dean could not have assigned Leggo to projects for those commercial customers and the federal government which had strict vaccination and/or testing requirements.

To the extent the Amended Complaint alleges that Leggo was threatened with suspension, dismissal, and termination after he opposed M.C. Dean's COVID-19 policy, [Dkt. No. 30] at 18, such allegations are conclusory and are actually contradicted by the documents plaintiff attached to his Amended Complaint. Those documents indicate that M.C. Dean's managers were expressing concern about the impact of having an unvaccinated workforce on the company's ability to fulfill its customer contracts and that unvaccinated employees would not be able to work on project sites with a vaccination requirement. None of these communications directly threatened specific employees with termination, and none of the emails or meetings which discussed the potential impacts to the unvaccinated workforce were specific to Leggo. Rather, these emails and meetings involved multiple M.C. Dean employees, and the communications were disseminated broadly among M.C. Dean supervisors and workers. Even though Leggo characterizes them as "threats," these actions do not amount to materially adverse employment action and cannot support a plausible claim for retaliation.

Finally, Leggo contends that he suffered adverse action because M.C. Dean continued to "impose the COVID policy" on him by harassing him with email reminders to complete the vaccine tracking form and to remind his team members to do the same, and by "coerc[ing]" him with email announcements about the changing vaccination requirements of M.C. Dean's federal and commercial customers. [Dkt. No. 30] at 19-20; [Dkt. No. 26-3] at 3-7. As defendant points out, because M.C. Dean's COVID-19 policy was enacted before he spoke up in opposition to it, there is no plausible causal connection between his opposition to the policy and continuing

imposition of the policy. See Speaks v. Health Sys. Mgmt., Inc., No. 5:22-cv-00077, 2022 WL 3448649, at *6 (W.D.N.C. Aug. 17, 2022). To the extent the Amended Complaint alleges a claim for a retaliatory hostile work environment, the allegations fall far short of the requirement that hostility in a work environment be "so severe or pervasive that it would dissuade a reasonable worker from making or supporting a charge of discrimination." Laurent-Workman v. Wormuth, 54 F.4th 201, 217 (4th Cir. 2022) (discussing a retaliatory hostile work environment claim under Title VII). Mere allegations of unwanted email reminders or notifications are insufficient to show that plaintiff was subjected to "discriminatory intimidation, ridicule, and insult" that "create[d] an abusive working environment." Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264, 277 (4th Cir. 2015). Because Count II does not sufficiently allege adverse action or causation, it fails to state a claim for retaliation and will be dismissed.

    Leggo is evidently upset that he has not been able to work to the full extent as other M.C. Dean employees because by refusing to disclose his vaccination status, he has been deemed unvaccinated; however, the pleadings filed by plaintiff make clear that M.C. Dean's COVID-19 policy was a response to the vaccination and testing requirements of its customers given the ongoing pandemic, and his claims that M.C. Dean discriminated or retaliated against him based on a perceived disability are therefore implausible and conclusory. Plaintiff was never terminated, demoted, or experienced a pay cut, and the documents attached to the Amended Complaint demonstrate that M.C. Dean was willing to find other project sites for unvaccinated employees like him, rendering any claim of disability discrimination or retaliation implausible.

    In sum, plaintiff's Amended Complaint will be dismissed. Plaintiff will not be granted leave to amend because he has had an opportunity to amend his complaint and any further

14

amendment would be futile. Therefore, dismissal of the Amended Complaint will be with prejudice.

## III. CONCLUSION

For the foregoing reasons, defendant's Motion to Dismiss Amended Complaint [Dkt. No. 33] will be GRANTED, and the Amended Complaint will be dismissed with prejudice by an accompanying order.

Entered this 7 day of February, 2023.

Alexandria, Virginia

/s/ *LMB*
Leonie M. Brinkema
United States District Judge